UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA CAMARENA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 15 C 00656 |
| v. | ) |
| | ) Judge Edmond E. Chang |
| VANDERBILT MORTGAGE and | ) |
| FINANCE, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Angela Camarena has sued Defendant Vanderbilt Mortgage and Finance, Inc., alleging that Vanderbilt violated the Telephone Consumer Protection Act (commonly known as the TCPA), 47 U.S.C. § 227, by calling her cell phone without permission and using an automated dialing system to do so.[1] Vanderbilt now moves to transfer the case to the Eastern District of Tennessee, where the company is based. Camarena, who lives in California, prefers to litigate the matter here in Chicago. For the reasons explained below, Vanderbilt's motion is granted.

**I. Background**

In 1997, Angela Camarena's father took out a loan from Vanderbilt to finance the purchase of a mobile home. R. 1, Compl. ¶ 5. According to the complaint, Vanderbilt is the leading issuer of credit for mobile homes in the United States, and services loans in all 50 states. *Id*. ¶ 4. After Camarena's father became ill and fell

---

[1]Federal-question jurisdiction is proper under 28 U.S.C. § 1331.

behind on his loan payments in mid-2013, Vanderbilt began calling Camarena and her father demanding payment on the loan. *Id*. ¶¶ 6-7. Camarena resides in Brawley, California. *Id*. ¶ 3.

Camarena alleges that she tried unsuccessfully to clarify with Vanderbilt's representatives whether her father had carried an insurance policy to cover the loan upon his death. *Id*. ¶ 9. In the meantime, Vanderbilt's calls continued into 2014, including being placed to Camarena's brother and grandmother as well, threatening foreclosure and repossession of the mobile home. *Id*. ¶ 11. Camarena never provided her number to Vanderbilt, never authorized the communications, and repeatedly asked Vanderbilt to stop calling. *Id*. ¶ 13.

Camarena believes that Vanderbilt used "skip tracing," a method involving "pulling credit histories and searching publicly available databases" to obtain contact information for persons that may be "obligated for consumer debts," as well as something called "Automatic Number Identification" to find her number. *Id*. ¶¶ 14, 15. Camarena alleges that Vanderbilt operates large-scale call centers across the country that use automated dialing systems to repeatedly call individuals believed to be debtors, including herself. *Id*. ¶¶ 19, 21, 28. Camarena brought suit here in the Northern District of Illinois on behalf of a nationwide class of persons who have been contacted by Vanderbilt's automated dialing systems in this way, which allegedly violates the TCPA. *Id*. ¶¶ 29, 30; *see* 47 U.S.C. § 227(b)(1).

2

## II. Legal Standard

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). To justify a transfer of venue, several factors must be satisfied: (1) venue must be proper in the transferor district, (2) venue would be proper in the transferee district, (3) the transferee district would be more convenient for the parties and witnesses, and (4) transfer would serve the interests of justice. *See Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913 (N.D. Ill. 2009); *see also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 n.3 (7th Cir. 1986). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation and internal quotation marks omitted); *see also Coffey*, 796 F.2d at 219 ("The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge."). The moving party has the burden of establishing "that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219-20.

## III. Discussion

To begin, for the purposes of this motion, neither party contests that venue is proper in this District and also would be proper in the proposed transferee district,

3

the Eastern District of Tennessee.[2] The Court therefore turns to whether transfer would provide convenience and serve the interests of justice. Both factors weigh strongly in favor of transfer.

**A. Convenience**

In assessing convenience, "courts generally consider the availability of and access to witnesses, … each party's access to and distance from resources in each forum[,] … the location of material events[,] and the relative ease of access to sources of proof." *Research Automation, Inc. v. Schrader-Bridgeport Int'l., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citations omitted). On the whole, the elements favor litigating this case in Tennessee.

First, most of the relevant witnesses in this case are in Tennessee. Vanderbilt's headquarters are in Maryville, Tennessee, located in the Eastern District of Tennessee, where nearly 900 of its 1053 employees work (and where former employees who might be called to testify also reside), including those likely to have direct knowledge of the calls made to Camarena and the policies and procedures behind such communications. R. 23-1, Affidavit of Vice President of Collections David Barton ¶¶ 2, 4, 5. These include Vanderbilt's Vice President of Collections, Chief Financial Officer, and other managers and team leaders (all of whom have knowledge of the loan servicing and telecommunication systems and

---

[2]Vanderbilt, while having raised an affirmative defense of improper venue in its answer, concedes that for purposes of this motion, "the Court may assume venue is proper in the transferor venue." R. 32, Def.'s Reply Br. at n.2 (citing *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013)) ("[Section] 1404(a) does not condition transfer on the initial forum's being 'wrong.'"). Similarly, Camarena does not contest that venue would be proper in the Eastern District of Tennessee.

4

records of communications with borrowers and customers). *Id.* ¶ 5. Telecommunications employees of a corporate affiliate of Vanderbilt that might very well have been involved in the calls also reside in the Maryville area. *Id.* ¶ 7. If the case continues to be litigated and goes to trial in Chicago, all of these witnesses, whose testimony would cover Vanderbilt's relevant practices, would have to incur travel expenses, which are a "central measure of [in]convenience." *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 962 (N.D. Ill. 2013). Thus, Vanderbilt has met its burden of identifying potential non-party witnesses and explaining the subject matter of their testimony, supporting its contention that there is greater convenience in litigating in Tennessee. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (party moving for transfer is "obligated to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included").

Second, transfer to Tennessee would mean improved access to resources for Vanderbilt, without any identifiable downside for Camarena. Camarena urges the Court to consider the time and expense of travel she would incur in getting to Tennessee. R. 31, Pl.'s Resp. Br. at 7. However, she chose to bring the action in a location thousands of miles from her home to begin with. There may not be any non-stop flights between San Diego (her home airport) and the Eastern District of Tennessee, as Camarena asserts, but she offers no specifics about just how much longer and more expensive a trip would be to Tennessee compared to Illinois. *See id.* In any event, even if she were to provide those details, it would not matter as much,

5

as the convenience of non-party witnesses outweighs that of the parties. *Amorose v. C.H. Robinson Worldwide*, Inc., 521 F. Supp. 2d 731, 736 (N.D. Ill. 2007) ("The convenience of party witnesses is less relevant than the convenience of non-party witnesses, since party witnesses normally must appear voluntarily.") (citation omitted). No one likes connecting flights, but that fact is not enough to tip the scales of convenience in Camarena's favor.

Third, at least some of the material events underlying the lawsuit can be said to have occurred in Tennessee. The unsolicited calls were made, at least in part, from a call center located at Vanderbilt's facilities in Tennessee. *See* Barton Aff. ¶ 4. By contrast, there is no way of connecting the alleged events to Illinois. To argue otherwise, Camarena points to past lawsuits filed in Illinois courts against Vanderbilt for similar unlawful activity (against unrelated plaintiffs), the fact that Vanderbilt has a registered agent in the state, and that the conglomerate that owns Vanderbilt has a nationwide network of retail outlets that include locations in Illinois. Pl.'s Resp. Br. at 5-6. All of that, it should go without saying, is neither here nor there as far as the material events alleged in *this* lawsuit are concerned. (If any other venue might be implicated by the alleged events, it would be Camarena's home district in California, where she presumably received the alleged unlawful calls. But, despite the convenience it would provide her, Camarena does not argue in the alternative for a transfer there.)

Finally, as for access to sources of documentary proof (as distinct from witness testimony), this factor does not weigh in favor of either venue. With the

6

advent of electronic discovery, where records are actually stored is less of a factor because "documents now are easily scanned, stored, and electronically transmitted" and "moving them no longer creates the onerous burden it may once have imposed." *Landis v. Warner Chilcott (US), LLC*, 2010 WL 5373664, at *3 (N.D. Ill. Dec. 15, 2010) (citation omitted). Because there is no reason to doubt that in this action, as in most cases today, discovery of the relevant call records and other corporate documents will be handled electronically, "the location of the documents is a neutral factor." *Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1053 (N.D. Ill. 2012) (citation omitted). "[T]he location of and ease of access to *physical* evidence" that is not reducible to electronic reproduction is, on the other hand, still "accorded more weight." *Craik,* 37 F. Supp. 3d at 961 (citing *Lewis*, 841 F. Supp. 2d at 1053-54) (emphasis added). Vanderbilt argues that this type of evidence will come into play in this case and is located in Tennessee, but Vanderbilt does not identify what this physical proof might be, in any shape or form. This speculation is therefore of no moment. *See Qurio Holdings, Inc. v. DIRECTV, LLC*, 2015 WL 1943278, at *4 (N.D. Ill. Apr. 29, 2015) (movant for transfer "fails to meet its burden to 'clearly' show" convenience where it does not point to *specific* physical evidence).

Moving beyond convenience, Camarena argues that she is nevertheless entitled to deference in her choice of forum. Pl.'s Resp. Br. at 5. It is true that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). But there is an exception that applies here: "When the plaintiff's choice is not its home forum, … the presumption

7

in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quoting *Piper Aircraft*, 454 U.S. at 255-56) (internal quotation marks omitted). As explained above, the balance of convenience factors does not support Camarena's chosen forum, which is not in any case her home. Because three of the relevant elements play to Vanderbilt's argument, and the fourth is neutral, the Court concludes that transfer of the case to Eastern Tennessee would be more convenient for the parties and witnesses.

### B. Interest of Justice

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation*, 626 F.3d at 978 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 626-27 (1964)). For this element, courts compare the transferor and transferee districts for a variety of factors, including "docket congestion and likely speed to trial," "each court's relative familiarity with the relevant law," "the respective desirability of resolving controversies in each locale," and "the relationship of each community to the controversy." *Id.* (collecting cases). The interest of justice "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220 (citations omitted). All in all, it too weighs in favor of transfer to Tennessee.

Docket congestion and likely speed to trial is a neutral consideration here. Vanderbilt argues that the Eastern District of Tennessee is less congested, pointing

8

out that in the year ending in September 2014, there were 286 civil cases filed there per judge versus 473 in this District. R. 24, Def.'s Br. at 12 (citing Federal Court Management Statistics). Camarena does not contest this statistic but, as she points out, Pl.'s Resp. Br. at 9-10, these raw totals are somewhat misleading. According to one "weighting" system that compares dockets across federal district courts by adjusting for the varying complexity of cases, the combined caseload per fulltime judge in the Eastern District of Tennessee was 461 versus 389 in this District for the one-year period ending June 2014. *See* Transactional Records Access Clearinghouse, "As Workloads Rise in Federal Courts, Judge Counts Remain Flat," available at http://trac.syr.edu/tracreports/judge/364/#f2, at Table 2. Both parties agree that the median time for a case to reach trial is 29.9 months in Tennessee's Eastern District and 35.3 months here. Def.'s Br. at 12; Pl.'s Resp. Br. at 9. Those numbers are comparable and do not reflect a significant disparity. Thus, overall, neither the transferor nor transferee district has any clear advantage in terms of congestion and speed to trial.

Also neutral is each court's relative familiarity with the relevant law. Camarena argues that this District is "far more competent" to adjudicate her claims because "numerous" TCPA cases have been filed here since the law was enacted, noting a recent observation in another opinion (dealing with an unrelated procedural question) that more TCPA suits have been heard here than in any other district. Pl.'s Resp. Br. at 9 (quoting *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014)). This argument is not compelling. Expertise with

9

relevant law might be a slight factor where federal courts sit in diversity and are tasked with applying state law, in which case deferring to a district court that regularly interprets that particular law could make sense. *But see Peterson v. U.S. Steel Corp.*, 624 F. Supp. 44, 46 (N.D. Ill. 1985) ("[F]amiliarity with state law does not weigh heavily in consideration of a motion to transfer since a change of venue under § 1404(a) is to be 'but a change of courtrooms.'"). But all federal courts are "presumed equally capable and experienced with respect to matters of federal law." *Midas Int'l Corp. v. Chesley, No.* 11 C 8933, 2012 WL 1357708, at *5 (N.D. Ill. Apr. 19, 2012); *see also Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 737 (N.D. Ill. 2007) ("Because this case concerns federal law, the familiarity with applicable law is neutral here."). Indeed, Camarena's logic would suggest that this District become a specialty court for TCPA disputes across the country despite the lack of any real articulable connection to the particular parties or conduct in question.

It is Tennessee that has a real connection to this dispute, not Illinois. The case concerns the allegedly unlawful behavior of a Tennessee corporation. The material events occurred in that state, in the sense that the automated calls were planned and originated there. Thus, Tennessee has the greater interest in resolving this controversy and the more meaningful relationship with it. *See, e.g., Sickman v. Asset Recovery Solutions, LLC*, 2015 WL 1911431, at *3 (N.D. Ill. Apr. 27, 2015). Certainly more than Illinois, whose only link is Camarena's bald assertion that "it

10

is likely that many class members will be from" here, Pl.'s Resp. Br. at 10, which is supported by nothing except speculation and thus adds nothing to the analysis.

Accordingly, the Court finds that the interest of justice, like the convenience of the parties and witnesses, weighs overall in favor of transferring the case to the Eastern District of Tennessee.

## IV. Conclusion

For the reasons discussed above, Vanderbilt's motion to transfer venue is granted.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 1, 2015